UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

---

BARBARA DELO,

               Plaintiff,

               v.

PAUL TAYLOR DANCE FOUNDATION, INC.
d/b/a PAUL TAYLOR DANCE COMPANY and
JOHN TOMLINSON, in his individual and
professional capacities,

               Defendants.

No. 22-cv-9416 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Barbara Delo, a former costumer for the Paul Taylor Dance Company (the "Company"), brings this employment discrimination and retaliation action against the Company and its Executive Director, John Tomlinson (collectively, "Defendants"). Delo alleges that the Company mistreated her during her employment due to her gender and status as a mother. Defendants now move to compel arbitration, which Delo seeks to block pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), Pub. L. No. 117-90, 136 Stat. 26, *codified at* 9 U.S.C. §§ 401-02. For the reasons that follow, Defendants' motion to compel arbitration is denied.

## BACKGROUND

### I.    Factual Allegations

The following facts are drawn from the Amended Complaint, which, for the purpose of determining whether the Amended Complaint states a plausible claim of sexual harassment, the

Court assumes to be true.[1]  Delo is a professional costumer who holds a Master of Fine Arts in Costume Design from the Tisch School of the Arts, with at least thirteen years of experience "spanning opera, regional, off-Broadway, Broadway theatre, and modern dance."  Am. Compl. ¶ 15.  In June 2021, while Delo was "visibly pregnant," she interviewed for a position with the Company as a Wardrobe Supervisor.  *Id.* ¶ 24.  She was interviewed by Defendant Tomlinson and Production Manager Stacey-Jo Marine, along with two other candidates, both of whom were male.  One of the male candidates was first offered the position but he declined.  Marine allegedly viewed Delo as "far more qualified" than the remaining male candidate, and others she consulted at the Company agreed.  *Id.* ¶ 25.  When she recommended hiring Delo, however, Tomlinson purportedly asked, "What will she do with the baby?"  *Id.* ¶ 26.  He chose to hire the "less-qualified man" instead, who soon "failed in the job and missed multiple scheduled work sessions."  *Id.* ¶ 28.  The Company then hired Delo as a full-time employee in September 2021.  *Id.*

Delo's husband, Christopher Chambers, was also hired by the Company as a member of the production team in July 2021.  At the Company's offices in Manhattan, Delo shared an office with Marine and Chambers.  *Id.* ¶ 50.  The Company did not give Delo a private space to pump breast milk, so she did so at her desk.  *Id.* ¶ 51.

---

[1] Motions to compel arbitration are typically "governed by a standard similar to that applicable for a motion for summary judgment," which requires "draw[ing] all reasonable inferences in favor of the non-moving party."  *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (internal quotation marks omitted).  Here, however, the parties do not raise any factual disputes with respect to the arbitration agreement between them.  The only question before the Court is a question of law: whether the arbitration agreement is enforceable under the recently enacted EFAA.  As discussed below, that analysis requires a determination of whether the Amended Complaint states a plausible claim of sexual harassment.  The Court evaluates the sufficiency of the allegations under Federal Rule of Civil Procedure 12(b)(6), accepting as true the facts alleged in the Amended Complaint and drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Johnson v. Everyrealm, Inc.*, 2023 WL 2216173, at *1 n.1 (S.D.N.Y. Feb. 24, 2023).

Because Delo was hired on "extremely short notice," she arranged for Chambers to stay home with their newborn baby for her first few days of work while they searched for a nanny.  *Id.* ¶¶ 30-31.  On Delo's first day, however, Chambers was called in on an "urgent lighting problem," and he was forced to bring the baby to the office.  *Id.* ¶ 31.  According to Delo, when Tomlinson saw her baby in the building, he "immediately found Marine to tell her, essentially, 'I told you so,' about hiring Ms. Delo."  *Id.* ¶ 32.  A week later, the Company was scheduled to perform at the Kennedy Center in Washington, D.C.  *Id.* ¶ 44.  Delo needed to bring the baby to D.C., but she hired a local nanny to care for her in the hotel room while she worked.  *Id.* ¶ 45.  Although, according to Delo, the baby's presence caused "no material disruption at all to [the Company] or [Delo's] duties," Tomlinson "refus[ed] to speak with her when he saw her around the hotel after hours with her child," *id.*, and "told Marine that he believed Ms. Delo was 'a liability,'" *id.* ¶ 46.

Several months after the Washington trip, in December 2021, Tomlinson called a meeting with Delo, Marine, and Chambers.  At this meeting, he allegedly "launched into a tirade about Ms. Delo bringing her child with her to Washington D.C.," and told them that the Company "practiced a 'separation of church and state' between family and work life."  *Id.* ¶ 55.  He said that it was "completely unacceptable for a child to appear in any [Company] workspace, ever," because it was "too distracting and disruptive."  *Id.*  He cited a previous situation where, over a period of "five or six years," a male dancer named Ted Thomas "constantly brought kids backstage" without a babysitter and "let them run wild."  *Id.* ¶ 57.  When Delo asked whether she had caused any problems, Tomlinson replied, "Not yet."  *Id.* ¶ 56.  Delo also asked why Tomlinson never criticized her husband when he came to work with their newborn child, to which he claimed he "did not know" that Chambers had a child.  *Id.* ¶ 60.  Tomlinson allegedly knew, however, that Delo and Chambers were married.  *Id.* ¶ 61.

Shortly after this meeting, on December 3, 2021, Delo wrote an email to a Human Resources representative, Sarah Schindler, to ask for clarification about "Tomlinson's declared 'church and state' policy regarding children." *Id.* ¶ 62. Schindler stated that there was "no problem" with Delo pumping breast milk at her desk. *Id.* ¶ 64. She also told Delo that "it was fine 'if once in a[] while you need to bring your baby,'" and that Tomlinson's concern was with "unsupervised kids running around," again citing the Company's experience with Thomas. *Id.* ¶ 65. Delo pointed out that she never brought her baby inside the theater, nor did she ever leave her baby alone unsupervised. *Id.* ¶ 66. Tomlinson emailed Delo later that day as well, stating that the Company would "be flexible and understanding if emergencies arose," but then "immediately contradicted himself" by adding that "[t]he rule is very straightforward—not having children in the workspace." *Id.* ¶¶ 67-68. In another email sent the same day, Tomlinson told Delo that the Company "ha[s] no rule/policy regarding the expression of breast milk," and that "our company is fine with your actions and New York State's laws . . . that govern the matter." *Id.* ¶ 72.

A few days later, when Delo was pumping breast milk at her desk, Tomlinson allegedly "barged into her office with two male repairmen . . . to fix the office's air handling system." *Id.* ¶¶ 77-78. While the repairmen were working, Tomlinson walked up to Delo's desk and "moved to use her phone," even though there were "at least two other open desks in the office with a connected and working phone that he could have used." *Id.* ¶ 80. To do so, he "reached across [her] body . . . while she was still expressing milk," picked up the phone, and "reached over her again with his other hand to dial a number." *Id.* ¶ 81. He then "began speaking to someone on the other end, all while hovering closely over Ms. Delo." *Id.*

Following the December 3 email exchanges, Delo allegedly "never again had a full conversation with Tomlinson." *Id.* ¶ 76. Instead, he "gave her the silent treatment from December

4

2021 straight through to June 2022," *id.*, and he "remained visibly angry" at her whenever she brought her baby on performance trips, *id.* ¶ 86.  Then, on April 8, 2022—the Friday before one of the Company's female dancers, Eran Bugge, was scheduled to return from maternity leave— the Company announced a new "Workplace Policy," which stated, in part, that "employees would be limited to 'brief and very occasional visits from friends or family,'" and "only in 'clearly defined public areas of the workspace.'"  *Id.* ¶ 93.  The Policy also stated that "absolutely no family could ever be present in Company-provided travel vehicles," which would "make it impossible, practically speaking," for Delo or Bugge to bring their babies on Company trips.  *Id.* ¶ 94.  Delo alleges that, as a result of the stress she felt from the Company's actions, she failed to pump enough milk for her child, and was forced to obtain donor milk.  *Id.* ¶ 104.

Through the end of the Company's annual season, Delo "routinely worked well over her 40 scheduled hours" per week, *id.* ¶ 121, and after the season's final event on July 22, 2022, the Artistic Director, Michael Novak, allegedly "thanked [Delo] in front of the entire staff for her good work," *id.* ¶ 125.  Four days later, Tomlinson fired Delo effective immediately.  *Id.* ¶ 127.  When Delo asked why she was being fired, Tomlinson stated that she was an at-will employee and could be fired without reason.  When she pressed further, he stated that "the whole 'organization' just felt she was 'not the right fit.'"  *Id.* ¶ 129.  Delo sought out Novak to see if he had a "better" explanation for her termination, and he only said, "This is the decision we made."  *Id.* ¶¶ 129-30.  Shortly after Delo was fired, she received the following text from one of the Company's dancers:

> This is so f***ed up.  I literally have no words to describe my anger.  I wish the dancers/myself felt secure enough to voice our concerns and feelings about certain situations and terminations but the truth is we all feel very scared and that we could be next to be fired.

*Id.* ¶ 131.

The Amended Complaint also makes allegations about other employees at the Company who experienced similar mistreatment.  When Bugge became visibly pregnant in late 2021, Tomlinson purportedly told Marine that Bugge was an "embarrassment."  *Id.* ¶ 34.  As her pregnancy progressed, Bugge requested minor modifications to her dance steps in order to protect her health and her unborn child, but the Company refused.  *Id.* ¶¶ 35, 38.  The Company "routinely granted such modifications to male dancers," however, including those who needed modifications due to their age.  *Id.* ¶ 36.  For example, "around this same time," a male dancer named Michael Apuzzo began modifying his routines without asking for prior approval, because he was entering his forties and could no longer perform "some of the more athletic and vigorous moves to full effect."  *Id.* ¶ 37.  Tomlinson allegedly did not question these modifications, and expressed to Marine that the Company "owed it to Apuzzo to 'support him where he's at.'"  *Id.*  The Amended Complaint describes another incident in the spring of 2022 where, at a donor event, Marine witnessed one of the Company's donors say "to a group of dancers, with several [Company] administrators standing nearby, that he was pleased to see that they were a 'f***able' group that year, unlike in some past years."  ¶ 107.  Around the same time, Marine was allegedly "accosted and intimidated" by the Company's Head of Licensing and Tomlinson's husband, Richard Chen See, which contributed to her decision to leave the Company in May 2022. *Id.* ¶¶ 108-19.  Finally, Delo alleges that Paul Taylor himself, the founder of the Company, "hated when his female dancers got married or became pregnant," and that he "felt that his dancers should stay loyal to him and his art by not marrying or having children."  *Id.* ¶ 41.

## II.    Procedural History and the Arbitration Agreement

On November 3, 2022, Delo filed her complaint in the instant action, alleging retaliation in violation of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New

York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"); gender and familial status discrimination in violation of the NYSHRL; and gender and caregiver discrimination in violation of the NYCHRL.  On March 24, 2023, Delo filed an Amended Complaint, adding discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964.

Defendants now move to compel arbitration of Delo's claims.  According to Defendants, Delo signed a Terms and Conditions Agreement during her onboarding process, which contains a Dispute Resolution Protocol ("DRP").  The DRP requires employees to arbitrate "any dispute arising out of or relating to your employment with your company."  Thompson Decl., Ex. A (the "Arbitration Agreement").  Delo does not appear to dispute that the Arbitration Agreement is otherwise valid and applicable to this dispute.  She argues, instead, that the Arbitration Agreement is unenforceable under the recently enacted provisions of the EFAA.

## DISCUSSION

The Federal Arbitration Act ("FAA"), which was enacted "in response to widespread judicial hostility to arbitration agreements," requires courts to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) ("[The FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements.").  The EFAA, however, amends the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute.

9 U.S.C. § 402(a).  "Sexual harassment dispute" is defined by the statute as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).  The EFAA applies to claims that accrued on or after March 3, 2022, the date of its enactment—it does not apply retroactively.  *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022).

Only two companion cases in this district, both decided by Judge Engelmayer, have considered whether a complaint "alleg[es] conduct constituting a sexual harassment dispute" within the meaning of the EFAA.  *See Johnson v. Everyrealm, Inc.*, 2023 WL 2216173, at \*11 (S.D.N.Y. Feb. 24, 2023); *Yost v. Everyrealm, Inc.*, 2023 WL 2224450, at \*11 (S.D.N.Y. Feb. 24, 2023).  The remaining "limited case authority to date," as Judge Engelmayer noted, "has solely concerned whether [the EFAA] applies retroactively and whether the claims at issue in those cases accrued after March 3, 2022."  *Johnson*, 2023 WL 2216173, at \*10 (collecting cases).  In *Yost*, Judge Engelmayer concluded that, to invoke the EFAA to block an arbitration agreement, the plaintiff must *plausibly* plead a claim of sexual harassment, rather than merely assert a non-frivolous claim.  *See Yost*, 2023 WL 2224450, at \*14-18.  He reasoned—in an analysis this Court finds persuasive—that reading the EFAA to incorporate a plausibility standard fully vindicates the statute's purpose in "empower[ing] sexual harassment claimants to pursue their claims in a judicial, rather than arbitral, forum," while also respecting the FAA's well-established mandate as a "liberal federal policy favoring arbitration."  *Id.* at \*17.  He further reasoned that Congress is familiar with the plausibility standard under Rule 12(b)(6) for measuring the viability of legal claims, and that, in other contexts, courts have construed the statutory term "allege" to require a viably pled claim.  *Id.* at \*16-17.

8

In *Johnson*, Judge Engelmayer further concluded that, where a dispute presents multiple claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case, not just the sexual harassment claims. *Johnson*, 2023 WL 2216173, at *16-19. The Court again agrees. "In interpreting any statute, we start with the plain meaning of the text, and absent any ambiguity, we end there too." *Wilson v. United States*, 6 F.4th 432, 436 (2d Cir. 2021). As Judge Engelmayer observed, the text of the EFAA is "clear, unambiguous, and decisive as to [this] issue," because the statute "makes a pre-dispute arbitration agreement invalid and unenforceable 'with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute.'" *Johnson*, 2023 WL 2216173, at *17 (emphasis in *Johnson*) (quoting 9 U.S.C. § 402(a)). The ordinary meaning of the word "case," moreover, refers to "a civil or criminal proceeding, action, suit, or controversy at law or in equity," which reflects an "undivided whole" and "does not differentiate among causes of action within it." *Id.* (collecting cases) (quoting Black's Law Dictionary (11th ed. 2019)); *see also United States v. Wedd*, 993 F.3d 104, 122 (2d Cir. 2021) ("In interpreting a statute, this Court gives the statutory terms their ordinary or natural meaning.").

Defendants do not actively engage with any of these nascent legal questions. Instead, they simply assert that Delo "does not allege a sexual harassment claim and alleges conduct that would not constitute sexual harassment." Def. Reply Br. 3. Defendants' argument appears to be two-fold: (1) Delo does not style any of her claims as "sexual harassment" claims, instead titling them retaliation, gender discrimination, and familial status discrimination claims; and (2) Delo's factual allegations do not amount to "sexual harassment" under New York law. *See id.* at 3-4. Defendants further argue, in the alternative, that Delo's claim did not accrue on or after March 3, 2022, the

day the EFAA was enacted.  With Judge Engelmayer's well-reasoned analysis of the EFAA as a
guiding framework, the Court addresses each argument in turn.

## I.      Delo Plausibly Alleges Conduct Constituting Sexual Harassment Under the NYCHRL

Defendants' initial suggestion that Delo cannot invoke the EFAA because none of her
claims are styled as "sexual harassment" claims is unpersuasive.  It is a well-established principle
that, when evaluating the viability of a complaint, courts focus on the substance of the factual
allegations and not how the causes of action are labeled.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("To survive a motion to
dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face'; "labels and conclusions . . . will not do"); *In re Am. Express
Anti-Steering Rules Antitr. Litig.*, 343 F. Supp. 3d 94, 100 (E.D.N.Y. 2018) ("In order to define
the 'claims' in a complaint . . . the court must look beyond any formal distinctions among 'counts,'
'causes of action,' and 'claims,' and examine the facts alleged and the legal relief sought."); *cf.
Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 36 (2d Cir. 2002) ("In determining whether a
particular claim falls within the scope of the parties' arbitration agreement, this Court focuses on
the factual allegations in the complaint rather than the legal causes of action asserted.").  And there
is nothing in the text of the EFAA that suggests its applicability hinges on how a claim is labeled.
To the contrary, § 401 appears to define "sexual harassment dispute" broadly, requiring only that
the claim "relates to" conduct that, as alleged, "constitutes" sexual harassment under applicable
law.  *See* 9 U.S.C. § 401(4); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384
(1992) (quoting Black's Law Dictionary (5th ed. 1979)) (observing that the ordinary meaning of
the phrase "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to

pertain; refer; to bring into association with or connection with'"); Black's Law Dictionary (11th ed. 2019) (defining "constitute" as "[t]o make up or form").

To further ease any doubt, the Second Circuit has made clear that allegations of a hostile work environment—which Delo expressly asserts throughout her Amended Complaint, *see* Am. Compl. ¶¶ 121, 136, 140, 149, 154, 164—are one of two recognized theories of sexual harassment. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986)) ("A plaintiff seeking relief against an employer for sexual harassment in the work place can proceed under two theories: quid pro quo harassment and a hostile work environment."). This is true both for federal claims brought under Title VII, *see Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004), and state claims brought under the NYSHRL and NYCHRL, *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2020). The substance of Delo's claims can thus be fairly characterized, at least in part, as alleged sexual harassment violations, even if they are not explicitly styled as such.

The next question is whether Delo plausibly alleges conduct constituting sexual harassment under federal or New York law. Under Title VII, plaintiffs alleging a hostile work environment face a heavy burden: they must show that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted). The NYSHRL used to be tied to the same "severe or pervasive" standard, *see Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013), but on October 11, 2019, it was amended to "adopt instead a more protective standard" for plaintiffs, *Maiurano v. Cantor Fitzgerald Sec.*, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021); *see also* N.Y. Exec. Law § 300 ("The provisions of [the NYSHRL] shall be construed liberally for the accomplishment of the remedial purposes thereof,

regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.").  Under the amended provision, a plaintiff need only show that she was subjected "to inferior terms, conditions or privileges of employment because of [her] membership in one or more of [the] protected categories."  N.Y. Exec. Law § 296(1)(h).  Courts have observed that the effect of the 2019 amendment was "to render the standard for claims under the NYSHRL closer to the standard under the NYCHRL," *Arazi v. Cohen Bros. Realty Corp.*, 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022) (quoting *Wellner v. Montefiore Med. Ctr.*, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)), although it is still unclear exactly where the NYSHRL standard falls, *see Nikolakopoulos v. Macy's Inc.*, 2022 WL 3903595, at *27 (S.D.N.Y. Aug. 30, 2022).

The Court will thus focus on Delo's NYCHRL claim, which has the "most lenient applicable liability standard."[2]  *Johnson*, 2023 WL 2216173, at *12.  Under the NYCHRL, a plaintiff alleging a hostile work environment theory of sexual harassment only needs to show that "she has been treated less well than other employees because of her gender," or put differently, faced "unwanted gender-based conduct."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 38-39 (App. Div. 2009));  *see also McHenry*, 510 F. Supp. 3d. at 65-66 ("Unlike Title VII or the NYSHRL, the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the conduct was severe and pervasive, requiring only that the plaintiff demonstrate she was subjected

---

[2] In *Johnson*, Judge Engelmayer notes that "State law" is undefined in the EFAA, but he read it to include local laws prohibiting sexual harassment, including the NYCHRL.  *See* 2023 WL 2216173, at *12 n.14. He sensibly reasoned that, "where Congress has defined 'state' elsewhere, it has done so broadly as including states' subdivisions," and doing so is "also consistent with the statute's broad stated purposes." *Id.* (collecting statutes).  The Court again agrees with *Johnson*'s analysis, and similarly reads "State law" in § 401(4) to include the NYCHRL.

to 'unwanted gender-based conduct.'").[3]  And plaintiffs need not establish that discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment, only that they were "treated less well at least in part because of [their] gender."  *Mihalik*, 715 F.3d at 110 (emphasis omitted).  While the NYCHRL is "not a general civility code," *id.* at 113, it should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," *id.* at 109 (quoting *Albunio v. City of New York*, 922 N.Y.S.2d 244, 146 (2011)).

The Amended Complaint meets the lenient bar of the NYCHRL.  To be sure, a number of the allegations in the Amended Complaint are indeed conclusory and cannot be given any weight in a plausibility analysis.  *See, e.g.*, Am. Compl. ¶ 88 (alleging that the new "Workplace Policy" was "clearly aimed at [Delo] and Ms. Bugge and calculated to make their work lives unpleasant"); ¶ 120 (alleging that Tomlinson treated Marine in a "brusque manner because she was a woman and because she had complained about discrimination"); ¶ 127 (alleging "[i]t is obvious Tomlinson had it in mind to fire Ms. Delo for some time due to his simmering discriminatory and retaliatory animus against her"); *see also Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  Nonetheless, the remaining factual allegations, taken as true, plausibly establish that Delo was subject to "unwanted gender-based conduct."  Among

---

[3] The court in *McHenry* also noted that, "[u]nder the NYCHRL, 'there are not separate standards for 'discrimination' and 'harassment' claims; rather, 'there is only the provision of the law that proscribes imposing different terms, conditions, and privileges of employment based, inter alia, on gender.'"  510 F. Supp. 3d at 66 n.5 (quoting *Clarke v. InterContinental Hotels Grp., PLC*, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013)).  *McHenry* thus "treat[ed] [the plaintiff's] sexual harassment and gender discrimination claims under the NYCHRL as coextensive."  *Id.*; *see also Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) ("In a hostile work environment claim, the harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex . . . Although sexual harassment is usually thought of in terms of sexual demands, it can include employer action based on sex but having nothing to do with sexuality.").

other things, Delo alleges that during her interview for the Wardrobe Supervisor position, when she was visibly pregnant, Tomlinson asked Marine, "What will she do with the baby?" and then hired a man for the position despite his having inferior qualifications, Am. Compl. ¶¶ 24-28; Tomlinson "chastise[d]" her in front of her team for bringing her newborn child on a performance trip to Washington, D.C., told Marine she was a "liability," and told her that it was "completely unacceptable for a child to appear in any [Company] workspace, ever," even though he did not similarly criticize male employees, including her husband, for previously bringing children to the workplace, *id.* ¶¶ 46, 55-58; Tomlinson once reached across her body and "hover[ed] closely over" her to use her desk phone while she was pumping breast milk, *id.* ¶¶ 80-81; and Tomlinson fired her at the end of the Company's season without giving her a concrete reason, even though she routinely worked overtime and had just received praise from the Company's Artistic Director for her work, *id.* ¶¶ 121, 125-30.  Taken together, these allegations are sufficient to state a hostile work environment claim under the NYCHRL's forgiving standard.  *Cf., e.g.*, *Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) (holding that a supervisor allegedly having made three comments about the plaintiff's perceived sexual orientation to "embarrass" him and "diminish [his] success" was enough to plausibly state a NYCHRL hostile work environment claim); *Carter v. Verizon*, 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (holding that a supervisor's alleged touching of the plaintiff's shoulders was "potentially gender-charged" and sufficient, albeit just barely, to state a hostile work environment claim under the NYCHRL).

Defendants' discriminatory animus can be further inferred from their treatment of other employees, particularly Bugge.[4]  That a male dancer was allegedly allowed to modify his dance

---

[4] Although Bugge is not a plaintiff in this action, the Court may, when analyzing a hostile work environment claim, consider allegations of mistreatment toward employees other than the plaintiff.  *See Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) ("[A] plaintiff need only allege that she suffered a hostile work environment because of her [protected characteristic], not that all of the offensive conduct was specifically

steps due to his age, while Bugge was not permitted to make "even de minimis changes" to her steps during her pregnancy—all while being told by Tomlinson that she was an "embarrassment" as a pregnant woman—reinforces the inference that the Company treated female employees "less well" due to their gender.  Am. Compl. ¶¶ 34-38; *see Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 81 N.Y.2d 211, 216 (1993) ("When interpreting [the NYSHRL], we have consistently held that distinctions based solely upon a woman's pregnant condition constitute sexual discrimination."); *Wenping Tu v. Loan Pricing Corp.*, 2008 WL 4367589, at *7 (N.Y. Sup. Ct. Sept. 23, 2008) (finding that the plaintiff plausibly alleged a NYCHRL sexual harassment claim based, in part, on comments made about her pregnancy, which "clearly are based upon [her] sex").

Defendants do not meaningfully engage with the plausibility of Delo's claims.  Instead, they contend that, if the Court "construe[s] [Delo's] gender and familial discrimination claims as equivalent to a sexual harassment claim for purposes of the [EFAA]," that would "in essence re-write the [EFAA] to cover all conduct constituting sexual harassment, gender discrimination and familial status discrimination."  Def. Reply Br. 3.  The Court disagrees.  Delo is suing Defendants in New York City, where, as discussed, the law defining and governing sexual harassment is notably—and intentionally—broad.  *See Mihalik*, 715 F.3d at 109 (observing that the NYCHRL should be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof"); *Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 195 (S.D.N.Y. 2018) ("Because the NYCHRL is designed to be broadly remedial, liability for sexual harassment under the NYCHRL is determined by the existence of any unequal treatment, and questions of severity and frequency are reserved for the consideration of damages.").  But the EFAA applies nationwide,

---

aimed at her."); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (holding that "[e]vidence of the harassment of women other than the [plaintiff] . . . was surely relevant to show the existence of a hostile environment at Ethan Allen," and reversing the district court's decision to exclude such evidence from trial).

and federal law, as well as other state and local jurisdictions outside of New York, define sexual

harassment more narrowly.  *See, e.g.*, *Alfano*, 294 F.3d at 373 (describing the "severe or pervasive"

standard under Title VII); *Beach v. Yellow Freight Sys.*, 312 F.3d 391, 396 (8th Cir. 2002) ("Under

the [Minnesota Human Rights Act,] a plaintiff alleging sexual harassment must prove that the

conduct in question . . . consist[s] of sexual advances, requests for sexual favors, sexually

motivated physical contact or other verbal or physical conduct or communication of a sexual

nature, and it must be sufficiently pervasive so as to substantially interfere with the plaintiff's

employment or to create a hostile, intimidating or offensive work environment.").  Defendants'

bid to reject Delo's reading of the EFAA as overbroad is thus unavailing.

Because Delo has, at the very least, plausibly pled sexual harassment violations of the

NYCHRL, the EFAA applies to block arbitration of all her claims.  *See Johnson*, 2023 WL

2216173, at *16-19.

## II.     Delo's Sexual Harassment Claim Accrued After March 3, 2022

In the alternative, Defendants argue that even if Delo has plausibly pled a sexual

harassment violation, her claim arose or accrued prior to the EFAA's enactment and is therefore

not covered by the statute.  Under the applicable anti-discrimination statutes, a claim typically

"accrues" when the last alleged "unlawful employment practice" or "discriminatory act" occurs.

*See Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 89 (2d Cir. 2003) (Title VII); *Kassner v. 2nd Ave.*

*Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (NYSCHRL and NYCHRL).  In addition,

hostile environment claims "will not be time barred so long as all acts which constitute the claim

are part of the same unlawful employment practice and at least one act falls within the time period,"

otherwise known as the continuing-violations doctrine.  *Davis-Garett v. Urb. Outfitters, Inc.*, 921

F.3d 30, 42 (2d Cir. 2019) (emphasis omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 115, 122 (2002)); *see also Villar v. City of New York*, 135 F. Supp. 3d 105, 133-34 (S.D.N.Y. 2015) ("As under Title VII, hostile work environment claims under the NYCHRL may be based on events outside the statute of limitations period to the extent they constitute part of the same actionable hostile work environment practice, and at least one act contributing to the claim occurs within the filing period.").[5]

Defendants argue that only two of the alleged discriminatory acts contained in the Amended Complaint occurred after March 3, 2022: Delo's allegation that Tomlinson gave her the "silent treatment" from December 2021 through June 2022, and the new "Workplace Policy" that the Company instituted on April 8, 2022. According to Defendants, these allegations "do not separately, or in combination, constitute sexual harassment," and Delo thus "may not avail herself of the 'continuing violation' theory for purposes of bringing any pre-[EFAA] conduct within the [EFAA's] coverage." Def. Reply Br. 5. This misstates the law. As the Supreme Court has observed, "[h]ostile work environment claims are different in kind from discrete acts"—instead, "[s]uch claims are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Thus, "a single act of [alleged] harassment may not be actionable on its own," *id.*, but it can still be considered as part of "the entire scope of [the] hostile work environment claim," *id.* at 105; *see also id.* at 116 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)) ("Workplace conduct is not measured in isolation . . . "). In the same vein, while an act "contributing to [the] hostile environment" must take place within the statute of

---

[5] Delo also argues that her claim "arose" after the EFAA's enactment, because a dispute "arises" only when a lawsuit is filed by the plaintiff, and she filed her original complaint on November 3, 2022. That argument, however, has been rejected repeatedly by district courts. *See, e.g.*, *Walters*, 623 F. Supp. 3d at 338; *Zinsky v. Russin*, 2022 WL 2906371, at *3 (W.D. Pa. July 22, 2022); *Newcombe-Dierl v. Amgen*, 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022).

limitations period for the claim to be timely, *id.* at 105, that contributing act does not need to be actionable on its own.

The Second Circuit confirmed as much in *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010), where, for statute of limitations purposes, it analyzed whether a single, allegedly demeaning comment from a coworker—"[i]f it wasn't going to be a sleep-over, she wasn't worth the trip," *id.* at 74—could be considered part of the same hostile work environment as earlier, time-barred acts, even though the court concluded that the comment in question could not sustain an actionable hostile work environment claim on its own. *See id.* at 77-79; *see also id.* at 77 (discussing *Morgan* and observing that "a component act" of a hostile work environment claim "need not be actionable on its own"). To be clear, that does not mean any unactionable comment or slight could be considered part of a hostile work environment for statute of limitations purposes. The *McGullam* court, for instance, found that another isolated comment made with the statutory period, allegedly referring to women as "chickies," was "too trivial" to be considered part of the hostile work environment claim. *Id.* at 76. While the Circuit has not set forth more detailed criteria for determining whether an alleged act is "too trivial" in this respect, the Court concludes that Delo's post-March 3, 2022 allegations—that Tomlinson did not speak to her for about six months, "visibly glowered" at her, and implemented a "Workplace Policy" that made it more difficult for her to bring her newborn child on performance trips, even though men were previously allowed to bring children into the workplace—clear the triviality bar. These are actions that, even if not actionable on their own, raise a suggestion of "unwanted gender-based conduct." *Mihalik*, 715 F.3d at 110.

Relatedly, Defendants argue that the post-March 3, 2022 allegations do not "contribute to a hostile work environment" and thus cannot be considered for accrual purposes. Def. Reply Br.

5.  The Court disagrees.  The test for whether an act "contributes" to a hostile work environment is whether it is "sufficiently related" to the other alleged conduct.  *McGullam*, 609 F.3d at 77. "*Morgan* requires courts to make an individualized assessment of whether incidents and episodes are related," and it "[did] not limit the relevant criteria, or set out factors or prongs" for making such an assessment.  *Id.* (citing *Morgan*, 536 U.S. at 118).  In *McGullam*, the Second Circuit focused on "the commonality of the environment in which the incidents took place (and whether a change in environment is due to intervening action by the employer," "the nature of the incidents," and "the temporal discontinuity between the incidents."  609 F.3d at 81 (Calabresi, J., concurring) (describing the majority opinion).  The panel accordingly concluded that the "sleep-over" comment was not sufficiently related to the earlier mistreatment of the plaintiff, because she had been transferred to a different department in the intervening time; the comment was not directed at the plaintiff, nor was it made by anyone from her former department; and the comment occurred nearly one year after her transfer, which, while not "preclude[ing] relatedness," made "less plausible the notion that the sleep-over comment is of a piece with the [plaintiff's former] department['s] conduct."  *Id.* at 77-78; *see also Morgan*, 536 U.S. at 120 (reasoning that the timely act was sufficiently related to time-barred conduct because "the pre– and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers," in addition to the fact that there was "evidence from a number of other employees" of racial discrimination in the workplace).

With this guidance in mind, the Court concludes that Delo's post-March 3, 2022 allegations are "sufficiently related" to her earlier ones.  All of the allegations occurred in the same environment, within the span of the same year, and were primarily perpetrated by the same person, Tomlinson.  The allegations are of a similar nature, in that they uniformly relate to Tomlinson's

purported mistreatment of and disdain for female employees, particularly those who are pregnant or have childcare responsibilities. The post-March 3, 2022 allegations can thus be considered acts that "contribute" to the hostile work environment, and as such, Delo's claim accrued after the EFAA's enactment date.[6]

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is denied. The parties shall appear for an initial status conference in this matter on August 16, 2023 at 2:00 p.m. Unless the parties request otherwise, the conference will be held by telephone with the following call-in number: (888) 363-4749 and access code: 1015508. This conference line is open to the public. Prior to the initial status conference, and no later than August 11, 2023, the parties shall file a proposed case management plan as described in the Court's order dated December 6, 2022.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 11.

SO ORDERED.

Dated:      August 1, 2023
            New York, New York

                                          _____
                                          Ronnie Abrams
                                          United States District Judge

---

[6] The Court notes that Delo was terminated in July 2022, which also occurred after the EFAA's enactment. Termination is generally considered a "separate and discrete act," however, and "cannot save [a plaintiff's] hostile work environment claim" that is otherwise untimely. *Brown v. N.Y.C. Dep't of Educ.*, 513 F. App'x 89, 91 (Table) (2d Cir. 2013); *see also Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) ("[W]hile a hostile work environment claim is treated as a continuing violation and treated as timely if one act contributing to the claim occurred within [the statute of limitations], discrete acts of discrimination such as termination that occur outside the limitations period are considered untimely."). The Court thus does not consider Delo's termination in analyzing the accrual of her hostile work environment claim.